UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No. 3:19-cv-

| | |
|---|---|
| ANGEL SANTIAGO, | ) |
| | ) |
| Plaintiff | ) |
| v. | ) |
| | ) |
| CITY OF SPRINGFIELD, OFFICER MISIAL | ) |
| RODRIGUEZ, POLICE COMMISSIONER JOHN | ) |
| R. BARBIERI, MAYOR DOMENIC J. SARNO, | ) |
| and OFFICERS JOHN DOE 1 - 4 | ) |
| | ) |
| Defendants | ) |

## COMPLAINT AND REQUEST FOR JURY TRIAL

### INTRODUCTON

1.  Angel Santiago was prosecuted for attempted murder and on other baseless charges after Springfield police staged a blatantly suggestive identification procedure with a purported eyewitness to a shooting, then ignored the shooting victim's own account and forensic evidence implicating someone else as the perpetrator, gave misleading testimony to a grand jury, and kept the excupatory evidence under wraps. As a result Santiago was wrongfully prosecuted as a violent criminal and incarcerated for more than eight months. The charges were dropped when he sought a court order for the withheld evidence and only then was he freed from the Hampden County jail.

2.  To recover for the harms sustained at the hands of state actors in this matter Santiago brings this action in federal civil rights under 42 U.S.C. §1983 and for violation of his rights under the statutes and common law of Massachusetts. Besides his claims against the individuals directly involved in conjuring false criminal charges against him, Santiago brings civil rights claims against the City of Springfield and its policymakers. They evidence shows they caused his misfortune by means of policy, usage, and practice in police matters amounting to assurance that officers could violate the rights of citizens at will, either with total impunity or at risk only of a symbolic and inconsequential euphemism for discipline.

### JURISDICTION AND VENUE

3.  This action is brought under 42 U.S.C. § 1983 for violation of plaintiff's federal constitutional rights and under state law for violation of his rights under the constitution, statutes, and common law of the Commonwealth of Massachusetts. This Honorable Court has original jurisdiction of the federal claims pursuant to 28 U.S.C. §§ 1331 and

1343.  The Court has supplemental jurisdiction of the state law claims pursuant to 28 U.S.C. 1367 because the state and federal claims arise from the same case or controversy and have a common factual basis.

4.  Venue is proper because the acts and omissions which gave rise to the suit occurred in this district, all parties reside and/or have their usual place of business in the district, and all are subject to the personal jurisdiction of the Court.  28 U.S.C. § 1391(b); 42 U.S.C. § 2000e-5(f)(3).

## PARTIES

5.  Plaintiff Angel Santiago  ("Mr. Santiago") is and was at all pertinent times, a citizen of the United States and a resident of the Commonwealth of Massachusetts, in the County of Hampden, in the city of Springfield.

6.  The defendant City of Springfield ("the City") is a duly incorporated municipality of the Commonwealth of Massachusetts with a usual place of business located at 36 Court Street, City of Springfield, Hampden County, Massachusetts.

7.  The defendant Misael Rodriguez ("Officer Rodriguez") was at all pertinent times a sworn police officer and detective of the Springfield Police Department ("SPD")  with a usual place of business at 130 Pearl Street, Springfield, Massachusetts. He resides in Hampden County, Massachusetts.

8.  Defendant John Barbieri ("Commissioner Barbieri") is and was at all pertinent times the police commissioner for the City of Springfield, and was acting as agent, servant and employee with a usual place of business at 130 Pearl Street, Springfield, Massachusetts. He resides in Hampden County, Massachusetts.

9.  Defendant Domenic J. Sarno ("Mayor Sarno") was at all pertinent times the Mayor for the City of Springfield, and he resides in Hampden County, Massachusetts.

10.  Defendants officer John Doe 1, John Doe 2, John Doe 3, and John Doe 4, are each individuals, whose identities are presently unknown to the plaintiff, who at all pertinent times were sworn officers of the SPD, and having a usual place of business at 130 Pearl Street, City of Springfield, Hampden County, Massachusetts.

## FACTS

11.  Each of the previous paragraphs is incorporated as if fully set forth herein.

12.  At all pertinent times each defendant acted as alleged in this Complaint under color of the laws, statutes, ordinances, and/or regulations of the Commonwealth of Massachusetts and/or of the ordinances, regulations and/or rules of the City of Springfield.

13.     At all pertinent times the conduct of each individual defendant was done in his or her capacity as an employee, servant, or agent of the City of Springfield.

14.     On or about September 5, 2016, at 31 Halsey Street in the City of Springfield, a man was shot after answering the door at his home ("the Halsey Street shooting").

15.     The victim's sister allegedly witnessed the incident and identified plaintiff as the shooter after viewing a single suggestive photograph of the plaintiff shown to her by, or with the knowledge of and/or at the behest of, Officer Rodriguez and/or Officer John Doe 1,2, 3, or 4 ("the officer defendants").

16.     The plaintiff was not shown a photo array before identifying the plaintiff as the shooter.

17.     The victim, when informed of his sister's identification of plaintiff as the suspect, expressed 'surprise' to  Officer Rodriguez and/or the other officer defendants that she claimed to have witnessed his shooting.

18.     Other than the identification by the victim's sister based on her view of a single photograph, there is no evidence of any kind to show motive or conduct by the plaintiff connecting him to the Halsey Street shooting.

19.     At the scene of this shooting one or more of the officer defendants recovered a shell casing and tagged it into evidence.

20.     Though Officer Rodriguez and the other defendant officers were assigned to investigate the shooting they made no effort to identify or investigate any person as a suspect in the shooting other than the plaintiff.

21.     The victim informed Officer Rodriguez and/or the other officer defendants that plaintiff was not the shooter and identified the actual perpetrator by name.

22.     The shooter named by the victim was also charged in a fatal shooting that occurred the day after the shooting plaintiff was accused of committing.  Police recovered a shell casing from this murder scene that matched the casing found at the scene of the Halsey Street shooting.

23.     Officer Rodriguez and the other defendant officers did not investigate this information and did not properly issue a police report concerning the information about the perpetrator of the Halsey Street the victim provided to them, despite their knowledge that this named perpetrator was charged in a murder at the scene of which a shell casing was found that matched the casing at the Halsey Street shooting scene.

24.     On the date of the Halsey Street shooting, September 5, 2016, plaintiff Santiago lived at 11 Webster Street, Springfield, with his mother, Sonia, and his brother.

25. On the date of the said shooting Officer Rodriguez came to the home where Sonia informed him Santiago was not there, having earlier come home, showered, and left.

26. At that time Sonia allowed Officer Rodriguez to enter and search plaintiff's bedroom; he found no weapon.

**27.** On the same day plaintiff was arrested by a defendant officer with a K-9 Officer and incarcerated at the Hampden County House of Corrections.

28. On or about November 22, 2016, defendant Springfield Officer Rodriguez testified before a in Hampden County, answering questions posed by Assistant District Attorney Maximilian Bennett.

29. In this testimony Officer Rodriguez stated that he knew about antagonism between the Halsey Street shooting victim and the perpetrator the victim had identified but he dismissed as mere 'facebook gossip' despite the fact that the victim had named the antagonist as the shooter.

30. In his testimony Officer Rodriguez sought to explain that the matching shell casings found at the two shooting scenes did not exonerate the plaintiff because in Rodriguez' opinion guns used in crimes could be "passed off" from one shooting perpetrator to another, although he had no evidence to support his opinion that the plaintiff, having shot the Halsey Street victim then passed the gun to another person who used it in a murder.

31. Rodriguez and/or other officer defendants intentionally withheld exculpatory evidence from the grand jury and gave misleading testimony in order to secure the indictments against the plaintiff; they failed to disclose that the Halsey Street victim had implicated someone other than the plaintiff as his shooter and Rodriguez gave misleading testimony regarding the matching shell casings.

32. The grand jury returned indictments against plaintiff Santiago for Armed Assault with Intent to Murder, Assault and Battery by Means of a Dangerous Weapon (serious bodily injury) and Illegal Possession of a Firearm. He could not post bail and remained locked up at the county jail.

33. The grand jury minutes containing this exculpatory information were not provided to Mr. Santiago's defense counsel until on or about February 6, 2017.

34. On or about May 17, 2017, plaintiff Santiago's counsel, filed discovery motions seeking mandated material pertaining to the named other suspect and the murder investigation including but not limited to identification, statements, credibility, officer investigatory material, crime scene material, ballistics testing, police reports, witnesses and cooperation materials.

35. On or about May 25, 2017, Assistant District Attorney Maximilian Bennett filed a *Nolle Prosequi* calling for dismssal of the charges "based on current evidence."

36. The court ordered dismissal and plaintiff was ultimately from jail May 25, 2017,  having spent more than eight months behind bars.

**Falsehoods and Omissions in Investigation of the Halsey Street Shooting**

37. In an effort to hide their lack of investigation and failure to follow police procedures, Officer Rodriguez and the other officer defendants disclosed the recovery of a shell casing at Halsey Street and intentionally failed to supplement their report to disclose that it matched the shell casing from the scene of a murder committed the next day, after the Santiago had been jailed.

38. In an effort to implicate Santiago in the Halsey Street shooting Officer Rodriguez and the other officer defendants provided a suggestive photograph of only the plaintiff to the victim's sister and included the photograph.  No photographic array was ever presented to this alleged witness.

39. Officer Rodriguez and the other officer defendants failed to report that the victim of the Halsey Street shooting they charged against plaintiff named his assailant and was 'surprised' that to learn of his sister's statements and her mistaken identification of Mr. Santiago.

40. Officer Rodriguez and the other officer defendants failed to report the victim of the Haley Street shooting had identified a perpetrator by name who was not Mr. Santiago and who was implicated in a fatal shooting the following day with the same gun used at Halsey Street.

41. Defendant Officers Misael Rodriguez and Yet-As-Unknown-Springfield-Police-Officers knew that they had a duty to report such information and to investigate it fully.

42. In an effort to shore up the contrived case against Mr. Santiago, in his grand jury testimony Officer Rodriguez discounted as "facebook gossip" the Halsey Street shooting victim's account linking a different person to the shooting by act and motive.

43.  Officer Misael Rodriguez testified before the grand jury that although the shell casings matched an incident from the following day, he attributed it to his experience that guns were routinely 'passed off' between 'different types of shootings' by 'acquaintances' although he had not a shred of evidence linking Mr. Santiago to the killer in the September 6, 2016, shooting.

**Defendants Failure to Enquire as to Their Cause**

44. Although an SPD supervisor came to the arrest location before Mr. Santiago was arrested and no weapon was found at his home pursuant to a voluntary search of it immediately after the event, the police failed to report or amend their reports to include exculpatory information concerning the shell casing tie to another event/suspect and that that suspect was named as the shooter by the victim.

45.     Although an SPD supervisor was involved with the investigation of the shooting for
        which Mr. Santiago was charged, a single photograph was shown to the sister of the
        victim based upon a list of people in the area named "Angel" and despite the victims
        surprise that she was there.  This was in contravention to SPD protocols and procedures
        concerning photographic arrays and reporting/investigation.

46.     In accordance with policies and procedures pursuant to SPD policies and *Silva-Santiago*
        protocols, field officers and commanding officers in the SPD at the time had a duty to
        report all exculpatory information in their police reports and to use photographic array
        procedures and protocols.

47.     In accordance with policy and protocols, SPD officers including Officer Rodriguez and
        the other officer defendants were required to:

        •       Ensure that their police reports were fully complete and updated to include all
                information including exculpatory information;
        •       Adhere to the precepts of Silva-Santiago photographic array protocols which
                included a form to be signed by the person viewing the array which was to consist
                of a series of non-suggestive photographs.
        •       File a complete and accurate report concerning the investigation with the officer
                of the Chief of Police before the completion of the shift;

48.     None of this happened.

49.     Although defendant Officer Rodriguez' immediate supervisors and the SPD chain of
        command up to and including Commissioner Barbieri soon learned the Halsey Street
        shooting victim had named as his assailant the same person charged in a shooting death
        of the following day, and also learned of the forensic link between the two shootings,
        there was no investigation or inquiry of any kind into the handling of the Halsey Street
        shooting case by Officer Rodriguez and the other officer defendants.

50.     SPD supervisory staff at the police station, Commissioner Barbieri, and Mayor Sarno all
        knew that failure to adhere to proper photographic array protocols as set forth in *Silva-
        Santiago* could result in misidentification and wrongful prosecution/conviction.

51.     Commissioner Barbieri, and Mayor Sarno all knew that failure to investigate, report or
        disclose exculpatory material in an investigation could result in misidentification and
        wrongful prosecution/conviction.

52.     Commissioner Barbieri, and Mayor Sarno all knew that failure to disclose, investigate or
        report exculpatory material to a grand jury together with material misrepresentation of
        that material could result in misidentification and wrongful prosecution/conviction.

53.     At all pertinent times professional police standards required that such material
        misrepresentations and omissions be investigated independently -- either by an agency
        outside of a police department or at least by the internal affairs department of the SPD.

54. Neither the City, Mayor Sarno, Commissioner Barbieri or anyone in the SPD initiated or sought an investigation into how or why defendant Officer Rodriguez or the other officer defendants failed to investigate, report or misrepresented material evidence.

55. Nor did the dismissal of criminal charges defendant Officer Rodriguez brought against Mr. Santiago arouse curiosity in the City, Mayor Sarno or Commissioner Barbieri as to the SPD's handling of the Halsey Street shooting.

56. The failure to initiate investigation into how Mr. Santiago was incarcerated for a crime he did not commit due to a lack of reporting, failure to adhere to array protocols, lack of investigation and misrepresentation in reporting and at the grand jury, demonstrates a systemic lack of accountability for the use of force within the SPD and deliberate indifference to the rights of citizens' on the part of the City, Commissioner Barbieri and Mayor Sarno.

**A history of failing to track, control, or discipline for use of excessive force**

57. In acting as they did, Springfield Police Officer Rodriguez and the other officer defendants could expect the City of Springfield, Mayor Domenic Sarno, and Police Commissioner John R. Barbieri would not mount a substantive investigation or impose discipline under the established policy and practice of the City and its policy makers of tolerating even flagrant false reporting by officers.

58. At all pertinent times Commissioner Barbieri, exercised authority over the SPD and its officers and was a maker of policy as to the SPD's standards of conduct and discipline.

59. At all pertinent times Commissioner Barbieri had the authority to discipline officers for misconduct, including the power to effectively recommend dismissal, and the power, authority, and duty to hold officers accountable for use of excessive or unjustified force and for misstatements of fact in official reports.

60. At all times pertinent times the Mayor Sarno was the chief executive of the City pursuant to its Charter.

61. As set forth in the City Charter at all pertinent times Mayor Sarno was the keeper of the peace within the City and had authority over Commissioner Barbieri and the SPD, including but limited the power to hire, discipline, or dismiss officers, and the power, authority, and duty to hold officers accountable for misstatements/omissions of fact in official reports.

62. As a result of his injuries Mr. Santiago was incarcerated against his will for crimes he did not commit and suffered loss of liberty therefrom.

63.    At all pertinent times the Defendants City of Springfield ("City"), Commissioner Barbieri and Mayor Sarno knew of their legal duty to train, supervise, monitor and discipline members of the SPD to observe the rights of persons, including their right to be free from malicious prosecution, wrongful conviction and misrepresentation at the hands of police.

64.    At all pertinent times the City, Commissioner Barbieri and Mayor Sarno failed to monitor, train, supervise, control and/or discipline SPD officers in photographic array protocols, reporting, investigation, misrepresentation in reporting and at grand jury with such recklessness, gross negligence and/or actual intent as to manifest deliberate indifference to the right of persons, including the plaintiff, to be free from malicious prosecution, wrongful conviction and misrepresentation at the hands of police.

65.    The use of fabrication, false reporting, misrepresentation and suggestive photographic arrays with  impunity in the SPD was at all pertinent times part and parcel of the general *de facto* policy, custom, practice and usage that gave officers extreme and unwarranted discretion in the use of force without requiring them to account for the same.

66.    As a matter of policy Commissioner Barbieri, Mayor Sarno and the City accorded this prerogative to police officers.

67.    As a matter of policy the Commissioner Barbieri, Mayor Sarno and the City did not substantively monitor, assess, or regulate the use of force by SPD officers but sought to maintain the appearance of doing so.

68.    As a matter of policy Commissioner Barbieri, Mayor Sarno and the City did not initiate inquiry into the arrest and incarceration of the innocent, such as Mr. Santiago – no matter how evident his innocence was while there was a pattern and practice to not pursue exculpatory material, to manipulate falsities in police reporting and to mislead the grand jury regarding the guilt of an individual..

69.    The policies of not investigating circumstances suggesting manufactured reporting through falsities or omissions, the manipulating of evidence and false testimony before the grand jury is evident from the acts and omissions of the City, Commissioner Barbieri and Mayor Sarno regarding numerous allegations of excessive force in complaints to the SPD and in suits by the alleged victims.

70.    In addition, there have been numerous civil rights lawsuits and complaints against the City of Springfield and police officers that allege physical abuse, serious injuries and or instances of malicious prosecution, false statements and failure to provide exculpatory evidence that have not resulted in any discipline.

71.    Before and after the incident from which this case arises, the City, Commissioner Barbieri and Mayor Sarno were aware of complaints and claims alleging use of excessive force and other civil rights violations on the part of the SPD officers, but on information and belief such allegations did not result in substantive investigation into such incidents or discipline of officers.

72.     By way of example, and without limitation, a SPD detective, Greg Bigda, received minor discipline for an incident of February 26, 2016, after a group of juveniles were arrested in town of Palmer after stealing an unmarked police vehicle, he interrogated the minors without their parents and threatened one of them with being physically brutalized, and with having drugs planted to frame him on drug charges and send him to prison for many years.

73.     Bigda, a highly regarded detective in the SPD stated clearly during this interrogation that he did not in the least care about being truthful in his police reporting but would do whatever was necessary to inflict retribution for theft of his unit's vehicle and failure of the juvenile to confess to this and other crimes Bigda claimed the juveniles had committed.

74.     A graphic thirty-two minute portion of this interrogation can be found at: https://www.youtube.com/watch?v=r1i3a0-qhME.

75.     On March 12, 2016, less than a month later, Detective Bigda twice staged late-night armed invasions of the home of his former girlfriend, SPD K-9 Officer Gail Gethins. During this home invasion he assaulted her and her boyfriend, Ed Vigneault – who was Bigda's narcotic's unit partner.

76.     Gethins told a district court judge in the Palmer district court in an application for restraining order that Officer Detective Bigda threatened to destroy her and her boyfriend, detective Vigneault.

77.     Gethins wrote in an affidavit Detective Bigda threatened her saying "I am going to kill you."

78.     Gethins also stated in a court affidavit she was in fear of her life "This occurred at approximately 1230AM. Knowing his history of drinking and owning firearms I am in fear and scare of what he will continue to do."

79.     Shortly after Detective Bigda began texting nasty messages and leaving voice messages to Vigneault and Gethins that said endearing things like: "Hey, Whore! Nice to meet ya… "I'll take care of all you people…".

80.     Detective Bigda also threatened Vigneault telling him "I will get you transferred out of the narcotics unit and ruin your career."

81.     On March 12, 2016 detective Vigneault complained to his narcotics supervisor, Lieutenant Alberto Ayala about Detective Bigda's assault, home invasion and making threats.

82.     But instead of ordering an immediate investigation Lt. Ayala dismissed Vigneault's allegations.

83.   On March 13th Lt. Ayala told detective Vigneault he would either transfer voluntarily out of the narcotics unit or would be kicked out.

84.   Upon information and belief, Vigneault also complained in early 2016 that Detective Bigda was allowed to work and drink in the narcotics unit while intoxicated and observed Detective Bigda and others actively consume alcohol at the police station while working before going out into the field to work and after returning to the police station. *Vigneault v. City of Springfield, et al*, Hampden Superior Court at ¶ 22.

85.   Commissioner Barbieri was aware of the Officer Gethins home invasion because on March 15th Deputy Chief Anthony who worked closely with Commissioner Barbieri told Vigneault he would be kicked out of the narcotics unit if he did not transfer.

86.   On October 28, 2016 Commissioner Barbieri made up a story when he signed an affidavit in the federal civil rights lawsuit of *Douglas v. The City of Springfield, Bigda, et al, Case No. 3:14-cv-30210-MAP*.  Commissioner Barbieri claimed that he was unaware of the assault of the Springfield juveniles in Palmer until he was contacted by the Hampden District Attorney's office during June 2016.

87.   In a different affidavit signed on February 2, 2017 Commissioner Barbieri affirmed he was aware of the Palmer incident immediately after it happened and claimed when he learned of the incident there no charges of misconduct other "than the act of leaving the vehicle unattended and running. As a result of that incident I gave the Plaintiff [Vigneault] a verbal reprimand."

88.   When Barbieri signed his October 2016 affidavit he was aware of Gethins and Vigneault's allegations regarding Detective Bigda's home invasion.

89.   But instead of recommending that Detective Bigda be fired for engaging in criminal and gross misconduct, Barbieri in consultation with Mayor Sarno agreed to offer Detective Bigda a sweetheart disciplinary deal while simultaneously throwing Vigneault under the bus.

90.   Barbieri agreed to suspend Detective Bigda for 60 days after trivializing Bigda's prior disciplinary history and describing Gethins assault and home invasion euphemistically as a "trespass."

91.   Barbieri wrote: "Detective Bigda's acceptance of responsibility for improper behavior, his previous lengthy employment without recent serious disciplinary (sic) a recent incident involving a **trespass during a domestic argument** which occurred shortly after this incident (which resulted in discipline and counseling); the likelihood of sustaining discipline based on other cases where suspensions have been overturned or civil service…" (Emphasis supplied).

92.   But in a February 2017 affidavit related to the Vigneault lawsuit, Barbieri characterized Detective Bigda's home invasion and assault of Gethins and Vigneault quite differently

"a recent incident involving a **B&E/misdemeanor during a domestic argument** which occurred shortly after this incident (which resulted in discipline and counseling)…" (Emphasis supplied).

93.   Barbieri justified the lax disciplinary deal he approved in favor of detective Bigda by stating: "Additionally Detective Bigda was departmentally transferred from his position" intimating his duties were restricted to desk duties when in fact Bigda has continued to patrol the streets in Springfield.  .

94.   Barbieri and the City pressured detective Vigneault into resigning from the SPD or be fired because Vigneault did not have the internal connections Bigda had.

95.   Vigneault filed a whistle blower and a civil rights lawsuit in Hampden Superior Court against Barbieri, Detective Bigda and others alleging he had been removed from the narcotics unit and improperly fired after he complained about Detective Bigda for engaging in criminal conduct, i.e. assaulting him and Gethins after a home invasion, drinking and intoxication in the narcotics unit while on duty and violating the civil rights of juveniles in Palmer.

96.   But Barbieri knowingly made a number of misleading claims in connection with the affidavit he prepared in the Vigneault lawsuit.  Barbieri claimed a) he was unaware Vigneault was a whistleblower, b) Detective Bigda enjoyed no "special influence" in the narcotics unit or in the SPD, c) he was unaware narcotic officers were drinking on the job.

97.   Barbieri claimed an additional IIU investigation was ordered for corroboration of drinking on the job in the narcotics unit. According to Barbieri "The results of that investigation did not turn up any corroboration from any source either inside or outside the department. This investigation included all of the individuals working in the narcotics unit and all of the non-Springfield law enforcement officer involved in the February 2016 incident."

98.   But all of the detectives from the narcotics unit that were questioned for "corroboration" have stated in federal depositions, they are close, like, admire, respect and have no criticism of Detective Bigda.

99.   Barbieri's assertions were not only misleading but they reinforce the widespread existence of a code of silence and a culture of impunity from the rank and file all the way up to his office.

100.   Mayor Sarno and Barbieri were familiar with the extensive history of civilian disciplinary complaints against members of the narcotics unit including Detective Bigda which is contained in

101.   Police records assembled by the SPD  shows the following SPD officers in the narcotics unit had a large number of complaints that were determined to be unfounded by the SPD:

- Detective Bigda had twenty-six (26) civilian complaints
- Lt. Kent had twenty-three (23) civilian complaint
- Detective Templeman had thirty (30) civilian complaints
- Detective Kalish had twenty (20) civilian complaints
- Detective Patruno had nine (9) civilian complaints
- Detective Kakley had thirteen (13) civilian complaints
- Detective Bates had twelve (12) civilian complaints

102.  This extraordinary number of complaints without any discipline evinced the existence of a code of silence in the SPD in 2016 and continuing.

103.  Detective Bigda and other members of the SPD narcotics unit were sued in federal court by an arrestee who claimed he was punched after being handcuffed, pistol whipped, and his girlfriend slapped in the face by one of the officers. *Douglas v. City of Springfield, Bigda et al.,* 3:14-cv-30210.

104.  During discovery it was learned that Detective Bigda failed disclose the existence of an informant and he lied about other critical aspects of the investigation that led to the arrest.

Discovery in *Douglas v. Springfield the City, et al,* produced extensive disciplinary records. Those records showed that Detective Bigda and his codefendants had been subject of approximately 133 complaints none of which were ever sustained even when the complainants in those cases alleged beatings of male and female prisoners, an individual being pistol whipped, a narcotics officers invoking Fifth Amendment rights during an internal investigation and getting away with it, frequent false reports, missing money, the use of racially or ethnically derogatory language, custodial beatings and even a complaint from a Western Massachusetts undercover narcotics officer working for a Federal Drug Task force who alleged he was roughed up and smeared by Detective Bigda.

105.  In 2016 the City of Springfield filed with the United States Federal Court a motion for summary judgment in Douglas v. City of Springfield, et al, 3:14-cv-30210 claiming that the City of Springfield should not be held liable because Mr. Douglas had failed to demonstrate a well settled and widespread pattern of police misconduct to show the City had constructive knowledge of it.

106.  City lawyers argued there was no evidence that Springfield had been deliberately indifferent to the rights of it citizens.

107.  But on October 14, 2016 the Honorable Katherine A. Robertson, U.S. Magistrate Judge in a Report and Recommendation Regarding Defendant's [City of Springfield] Motion for Summary Judgment, denied Springfield's motion stating: "A reasonable finder of fact could also infer that there were flaws in the city's investigation of civilian complaints that demonstrated deliberate indifference to the risks posed by officers against whom large number of civilian complaints about excessive use of force had been made."

108.  Judge Robertson also opined "The IIU ("Internal Investigating Unit") submitted as evidence by Plaintiff show what appears to be a consistent pattern of rejecting civilian complaints against police officers." (citations omitted).  Judge Robertson also concluded "Taking these factors into account, a reasonable finder of fact could conclude that Springfield's investigative process was less than effective at identifying officers prone to the use of excessive force."

109.  Finally, she concluded "Because Plaintiff claims to have been the victim of excessive use of force during the execution of an arrest warrant, he has "produce[d] evidence that serious prior incidents similar to the alleged constitutional violation in question put the municipality on inquiry notice of [the officers'] danger to the public and that the police department's policy of ignoring or covering up those incidents was 'the moving force' behind the alleged violation."

110.  On or about December 2016, the City of Springfield agreed to pay $1.4 Million to a an individual in Charles *Wilhite v. City of Springfield* USDC-MA Case No. 3:14-cv-30023KPN, after he filed a federal civil rights lawsuit alleging that on December 2010 he was convicted of first degree murder based solely on false eyewitness testimony. The witnesses according to the complaint, recanted and revealed detectives Pioggia and Tatro of the SPD threatened and coerced them to implicate Mr. Wilhite who spent 40 months in prison.

111.  The City of Springfield and a group of former detectives and other parties are also defendants in a lawsuit that alleges that Mark Schand was wrongfully incarcerated for 27 years "as a direct result of doctored and suppressed police reports, coerced and unreliable witness statements, improper identification procedures, and a general pattern of blatant disregard for the law on the part of the Defendants, … Shand… spent 27 years in prison for murder, assault and robbery he did not commit. Arrested at the age of 21, Plaintiff was wrongfully convicted and sentenced to life in prison without the possibility of parole. *Schand et al, v. City of Springfield, et al*, USDC-MA Case No. 3:15-cv-30148MAP, Document 1, 8/20/2015.

112.  Specifically the complaint alleges "The City of Springfield and the SPD also withheld and doctored key exculpatory evidence."

113.  The lawsuit was filed after the Commonwealth of Massachusetts *nolle prossed* all of the indictments against Schand on October 16, 2013.

114.  In *Ververis et al v. Kent et al.*, U.S. District Court, District of Massachusetts, Docket No. 3:13:-cv-30175, a civil rights case filed October 22, 2013, the plaintiff alleged that, in response to a request for Sgt. Kent's badge number, that Kent and three other SPD officers dragged him from his vehicle, beat him, and choked him until he was unconscious. He also alleged one of the officers kicked and dragged his body on the snow-covered ground.

115.     The Ververis suit also alleged that Sgt. Kent countenanced the unlawful seizure of a cell phone a bystander had used to record the incident, and that when police returned the cell phone to its owner months later the recording had been erased.

116.     In a ruling of January 15, 2015, denying the City's motion for summary judgment dismiss Ververis' claim alleging unconstitutional conduct by the City was a cause of the incident, the federal  Court held:  "There are sufficient disputed issues of fact to support Plaintiff's claim that the violation of his civil rights stemmed from an established custom and policy of the City of Springfield."

117.     Springfield agreed to pay Ververis $175,000 to compensate him for his injuries.

118.     In *Owens v. Sullivan et al* USDC Docket No. 3:12-cv-30119, filed on April 9, 2013, a federal court jury determined that an SPD officer's use of excessive force on 15 year old Delano M. Walker, Jr., (lunging at him and grabbing his neck for failing to hang up his cell phone) caused the boy's death when he was struck and pinned under a car while trying to avoid the officer.

119.     The jury verdict of September 22, 2014 came with a damages award of $1,262,000. No one was disciplined as a result of Walker's death.

120.     In *Thomas v. City of Springfield et al.,* USDC 3:97:cv-30166, filed May, 13, 2010, the plaintiff alleged that SPD officers – including Sgt. Kent,  Detective Templeman, Detective Bigda, and Detective Patruno – removed him from his vehicle, pulled his pants down in the middle of the street, kicked and punched him over his entire body, then strip searched and beat him again at the police station.

121.     In another criminal case, *Commonwealth v. Reyes,* a Hampden Superior Court Judge (Page, J), held a Franks hearing to determine if Officer Templeman, a narcotics officer, had provided false testimony in an affidavit to obtain a search warrant.

122.     Justice Page suppressed evidence out of the case after finding that detective Bigda and Templeman had given false testimony about the movements of a defendant.  See Commonwealth v. William Reyes, Hampden Superior Court, HDCR2007-00281.

123.     Specifically, Templeman attempted to bootstrap probable cause by fabricating observations of the whereabouts of Mr. Reyes that were later discredited because Mr. Reyes's Court electronic monitoring transmitter (ELMO) contradicted Templeman's false testimony i.e. the ELMO records established that at the time Templeman made his observations of Reyes, Reyes had gone out of range of his box for an hour and twenty minutes before Detective Templemen claims to have made his observations.

124.     None of the officers criticized by Judge Page were disciplined or retrained.

125. *Baldwin v. Ryan et al.*, USDC Docket No. 3:07-cv-30167, filed September 10, 2007, alleged that an African American male was beaten "brutally upon the head face and body by three white police officers" while he was handcuffed.

126. *Lewis v. Springfield et al.*, USDC Docket No. 3:02-cv-30027, filed on May 14, 2003. October 22, 2013, accused Sgt. Kent and other SPD officers of violating the civil rights of a driver who alleged he was dragged from his car, thrown against the vehicle, told "he was being taken to a special place to get his ass kicked," and was then taken to the police station and strip searched.

127. On information and belief, none of the foregoing allegations of SPD officers' violation of civil rights resulted in any action to correct or review their conduct, either by way of genuine scrutiny under professional standards of investigation or by discipline.

128. In *Melvin Jones v. City of Springfield, et al.,* USDCT-Dist. Mass. Case No. 3:10-cv-30244-MAP, Doc. 51, 6/6/2011 Mr. Jones claimed Officer Asher and others were videotaped beating him after they slammed him into the hood a police cruiser. He alleged being kicked in the groin and back and was viciously struck in the head with a metal flashlight in 2009 while one of the officers called him a "Nigger."

129. Melvin Jones who was beaten by Officer Asher with a flashlight suffered broken facial bones and partially lost vision in one eye from an estimated 20 blows to the head.

130. None of Officer Asher's associates stopped Jones' beating.

131. Jones brought civil rights claims not only against Asher but against the City, claiming the beating happened because of an unconstitutional policy of failing to train, supervise, and discipline officers for violent misconduct was a cause of the beating.

132. The City of Springfield settled Jones' suit for $575,000 in 2012.

133. During the discovery period in the Jones case, SPD Police Commissioner William J. Fitchett gave a deposition about the practices of the SPD including an eighteen year period in which he investigated officers for the alleged use of excessive force and how he was the final authority in those cases.

134. A video tape of Jones arrest and beating was captured by a Springfield resident and was given to Masslive.

135. Without the existence of the videotape no one would have been disciplined by the City. This demonstrates the existence of a code of silence.

136. Two of the participants in Jones' beating, officers Michael Sedergren and Theodore Truiolo testified during the criminal trial on Asher's behalf defending his actions.

137.  At trial Sedergren, testified he yelled for fellow officers to hit Jones because he was sure Jones was reaching to take his gun out of his holster.

138.  Asher was found guilty and spent a year in jail on a criminal assault conviction.

139.  Fitchett concluded after reviewing a video that Asher used deadly force that should not have been used.

140.  Fitchett concluded that when Officer Asher struck Mr. Jones with a flashlight the strikes were not only inconsistent with the baton policy because there were too many strikes directed at an area "[T]hat was a very dangerous area to strike someone at. I believe those number of strikes in the area that the strikes were made was inappropriate, and that Officer Asher used force that was not necessary in order to effect the arrest."

141.  Fitchett testified that all of the officers involved in the arrest of Melvin Jones invoked their Fifth Amendment rights against self-incrimination, i.e., Asher, Sedergren, Lt. Bobianski, Officer Truiolo, and they never gave statements to the IIU officers that Fitchett assigned to investigate the incident.

142.  Despite their refusal to answer questions during an IIU investigation, Lt. Bobianski, Sedergren and Truiolo continue to be employed by the SPD, i.e., Fitchett suspended Bobianski for 45 days without pay, Officer Truiolo for 15 days.

143.  Mayor Sarno's and the City's refusal to fire these employees demonstrates gross negligence and deliberate indifference to the rights of Springfield citizens.

144.  Fitchett admitted in his deposition that Officer Asher "…[H]ad a lot of disciplinary complaints" prior to the Melvin Jones incident.  Transcript. A prior civilian complaint was filed against Officer Asher. That other complaint alleged excessive force by Asher against an African American arrestee (Roy Parker) which resulted in a one year suspension reduced to six month through arbitration.

145.  Fitchett admitted Asher kicked Roy Parker in the shoulder while two police officers were on top of him.

146.  Fitchett identified in his deposition the booking photo of Melvin Jones which depicted visible injuries.

147.  Fitchett testified he was aware Jones sustained a fracture around his sinus and an orbital wall fracture and had surgery.

148.  Fitchett acknowledged during his deposition that Officer Asher had been charged with multiple disciplinary complaints that alleged excessive force (threats of force) and other disciplinary concerns. Some of them resulted in discipline and others did not.

149.   Fitchett acknowledged Asher was not disciplined or terminated for other incidents, one in which he allegedly hit the principal of a charter school on the head with an object while he was on the ground even though the City of Springfield paid the Plaintiff in that case (Douglas Greer) the sum of $180,000.

150.   Fitchett testified the internal affairs hearing board uncovered evidence during the investigation indicated to him that the officers that came in contact with Melvin Jones (Asher, Sedergren, Truiolo, Bobianski) were guilty of either misconduct, neglect of duty in regards to the performance of duty.

151.   At all pertinent times the SPD officers and Officer Rodriguez/As-Yet-Unknown-Springfield-Police-Officers in particular knew they would incur no significant risk of discipline or dismissal for participating in or countenancing the beating of Mr. Ramos because they were fully aware of the policy and practice of the City in not substantively investigating allegations of excessive force and other constitutional violations by SPD officers, and the City's policy and practice of not disciplining officers for such violations.

152.   The City of Springfield's conduct in failing to, supervise, and discipline its officers to assure they used force appropriately and lawfully was a moving force behind the SPD officer defendants' unlawful assault upon the plaintiff in violation of his civil rights as complained of herein.

### Plaintiff's Damages

153.   As a direct and proximate result of defendants' conduct as set forth herein, plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering and other grievous and continuing injuries and damages.

154.   Plaintiff spent eight months of the prime of his life in the house of correction.

155.   Plaintiff was deprived of opportunities to engage  in education, meaningful labor, to develop a career and to pursue his interests and passions, or to associate with friends and family and instead endured the tedium, isolation, and forced association with accused and/or convicted criminals.

156.   Because of defendants' misconduct, Mr. Santiago has been deprived of all basic of human experience, which all free people enjoy as a matter of right, including the freedom to live one's life as an autonomous human being.

157.    Defendants are jointly and severally liable for violating plaintiff's rights under the Constitution of the Commonwealth of Massachusetts and under the United States Constitution and for all injuries he sustained as a result of the constitutional violations.

## COUNT I

### 42 U.S.C. § 1983: Due Process
### Officer Rodriguez, Officers John Doe 1, 2, 3, and 4

158.    Plaintiff incorporates each paragraph of this Complaint as if fully stated here.

159.    In the manner described more fully above, Defendants, while acting as investigators, individually, jointly, and in conspiracy with one another, as well as under color of law and within the scope of their employment, deprived Plaintiff of his constitutional rights to due process and to be subject to arrest only on probable cause.

160.    As a direct result thereof plaintiff was wrongfully incarcerated and otherwise harmed as set forth herein.

## COUNT II

### 42 U.S.C. § 1983: Failure to Discipline, Supervise
### City of Springfield, Barbieri, Sarno

161.    Each of the foregoing paragraphs is incorporated as if fully set forth herein.

162.    Prior to September 5, 2016,  and continuing, the Defendant, City of Springfield and its policy makers (Barbieri and Sarno) have maintained customs, policies and practices that evince deliberate indifference to the rights of citizens that come in contact with members of the police department.  The likelihood of infringement of citizens' rights resulting from the said customs, policies and practices was so obvious these defendants were either aware of it, or if they were not their ignorance was due to deliberate indifference to the use of police power to abridge constitutional rights.

163.    The City of Springfield and its policymakers at all pertinent times failed to maintain a minimally appropriate supervisory and disciplinary systems for its officers in key areas of law enforcement including requiring officers to file truthful police reports.

164.    As a direct and proximate result thereof, the plaintiff suffered the losses and injuries described herein.

## COUNT III

### 42 U.S.C. § 1983:  Federal Malicious Prosecution
### Officer Rodriguez, Officers John Doe 1, 2, 3, and 4

165.    Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

166.    In the manner described above Defendants, acting as investigators, individually, jointly, and in conspiracy with one another, as well as under color of law and within the scope of

their employment, accused Plaintiff of criminal activity and exerted influence to initiate, continue and perpetuate judicial proceedings against Plaintiff without any probable cause for doing so and in spite of the fact that they knew Plaintiff was innocent.

167.   In so doing, Defendants caused Plaintiff to be unreasonably seized without such probable cause and deprived of his liberty, in violation of Plaintiff's rights secured by the Fourth and Fourteenth Amendments.  The false judicial proceedings against Plaintiff were instituted and continued against him maliciously, resulting in injury.

168.   Defendants also deprived Plaintiff of fair state criminal proceedings, including the chance to defend himself during those proceedings, resulting in a deprivation of his liberty, and Massachusetts law does not provide an adequate state law tort remedy to redress that harm.

169.   In addition, Defendants subjected Plaintiff to arbitrary governmental action that shocks the conscience in that Plaintiff was deliberately and intentionally framed for a crimeof which he was totally innocent, through Defendants' fabrication and suppression of evidence and their use of unduly suggestive identification procedures.

170.   The misconduct described in this Count was objectively unreasonable and undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of the truth and Plaintiff's clear innocence.

171.   As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, humiliation, degradation, and other grievous and continuing injuries and damages as set forth, above.

172.   On May 25, 2017, the judicial proceedings against Plaintiff were terminated in his favor, in a manner indicative of his innocence and due to the 'current evidence,' when the Commonwealth of Massachusetts entered a *nolle prosequi*.

173.   Defendants' misconduct described in this Count was undertaken pursuant to the policies, practices, and customs of the City of Springfield, and by Defendants who were final policymakers for Defendant City of Springfield, in the manner more fully dscribed, above.

### COUNT IV

### 42 U.S.C. § 1983: Supervisory Liability
**Commissioner Barbieri and Mayor Sarno**

174.   Each of the foregoing paragraphs is incorporated as if fully set forth herein.

175.   Defendants Commissioner Barbieri and Mayor Sarno have acted with deliberate indifference to the constitutional rights of citizens by failing to train, supervise, monitor and discipline SPD officers to investigate and prosecute crimes based on the evidence, to refrain from ignoring and withholding exculpatory evidence, to report truthfully as to

their investigation and findings, and never to manipulate or stage the evidence or to suborn in accurate identification of criminal suspects by witnesses.

176. This conduct, was in whole or in part the moving force behind the constitutional violations to Santiago's rights and resulting injuries.

## COUNT V

### 42 U.S.C. § 1983: Conspiracy to Deprive Constitutional Rights
### Officer Rodriguez, Officers John Doe 1, 2, 3, and 4

177. Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

178. After the shooting of the victim at 31 Halsey Street, Springfield, MA on or about September 5, 2016, Defendants, acting in concert with other co-conspirators, known and unknown, reached an agreement among themselves to frame Plaintiff for the shooting, a crime he did not commit, and thereby to deprive him of his constitutional rights, all as described in the various paragraphs of this Complaint.

179. In so doing, these co-conspirators conspired to accomplish an unlawful purpose by an unlawful means. In addition, these co-conspirators agreed among themselves to protect one another from liability for depriving Plaintiff of these rights.

180. In furtherance of their conspiracy, each of these co-conspirators committed overt acts and were otherwise willful participants in joint activity.

181. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, andin total disregard of the truth and Plaintiff's clear innocence.

182. As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, humiliation, degradation and other grievous and continuing injuries and damages as set forth above.

183. Defendants' misconduct described in this Count was undertaken pursuant to the policies, practices and customs of Defendant City of Springfield, and by Defendant who were final policymakers for Defendant City of Springfield, in the manner more fully described, above.

## COUNT VI

### State Law Claim  - Malicious Prosecution
### Officer Rodriguez, Officers John Doe 1, 2, 3, and 4

184. Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

185.   In the manner described above, Defendants, acting as investigators, individually, jointly , or in conspiracy with one another, as well as within the scope of their employment, accused Plaintiff of criminal activity and exerted influence to initiate and to continue and perpetuate judicial proceedings against Plaintiff without any probable cause for doing so and in spite of the fact that they knew Plaintiff was innocent.

186.   In so doing, these Defendants caused Plaintiff to be subjected improperly to judicial proceedings for which there was no probable cause.  These judicial proceedings were instituted and continued maliciously, resulting in injury.

187.   The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of the truth and Plaintiff's clear innocence.

188.   As a result of Defendants' misconduct misconduct described in this Count, Plaintiff suffered loss of liberty, humiliation, degradation and other grievous and continuing injuries and damages as set forth above.

189.   On May 25, 2017, the judicial proceedings against Plaintiff were terminated in his favor, in a manner indicative of his innocence and due to the 'current evidence,' when the Commonwealth of Massachusetts entered a *nolle prosequi*.

190.   Plaintiff presented his state law claims included in this Complaint to Defendants, as required by Massachusetts law, on September 5, 2018.

## COUNT VII

### Negligence, Chapter 258
### City of Springfield

191.   Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

192.   Defendants owed Plaintiff a duty to refrain from framing him for a crime he had not committed and to conduct a legal and thorough investigation of the shooting on the victim at 31 Halsey Street in Springfield, MA, on September 5, 2016, that resulted in the accurate identification, arrest and prosecution of criminal suspects.

193.   In the manner described more fully, above, the actions, omissions and conduct of Defendants breached this duty.

194.   The misconduct described in this Count was objectively unreasonable and was undertaken in total disregard of the truth and Plaintiff's clear innocence.

195.   As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, humiliation, degradation and other grievous and continuing injuries and damages as set forth above.

196. Plaintiff's losses are due, in whole or in part, by the negligence of Officer Rodriguez and/or the other defendant officers in the investigation of the Halsey Street shooting, and/or by the negligence of their supervisors, Barbieri, Sarno and the City of Springfield in the supervision and discipline of police officers.

197. On September 5, 2018, Mr. Santiago, by his counsel, gave notice to the City of Springfield of his claim for compensation as provided by law for the negligent conduct of the City or its employees in this matter. To date no settlement of this claim has occurred.

## COUNT VIII

### State Law Claim - Civil Conspiracy
### Officer Rodriguez, Officers John Doe 1, 2, 3, and 4

198. Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

199. As described more fully above, these defendants, acting in concert with other co-conspirators, known and unknown, reached an agreement among themselves to frame plaintiff for a crime he did not commit and conspired by concerted action to accomplish and unlawful purpose by unlawful means, and to protect one another from liability for depriving plaintiff of his rights.

200. In furtherance of their conspiracy each of the co-conspirators committed overt acts or omissions and were otherwise willful participants in joint activity.

201. The conduct described in this count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and with total disregard for the truth and for plaintiff's known innocence.

202. As a direct result of the defendants' conspiracy plaintiff suffered the harms and losses set forth herein.

## COUNT IX

### Failure to intervene
### Officer Rodriguez, Officers John Doe 1, 2, 3, and 4

203. Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

204. Officer Rodriguez and Officers John Doe 1, 2, 3, and 4 each learned of ongoing actions or omissions by one or more other officers the plain effect or intent of which was to violate plaintiff's rights and the laws of the United States and of Massachusetts by prosecuting and jailing plaintiff for a crime he did not commit.

205. As police officers sworn to uphold the law each of these defendants had a duty to intervene to stop and/or to report the said misconduct of other officers.

206. The defendants failed to intervene to stop the violation of plaintiff's rights or report the same to the SPD.

207. As a direct and proximate result of the foregoing plaintiff sustained the harms and damages set forth herein.

## COUNT X

### Intentional Infliction of Emotional Distress
### Officer Rodriguez, Officers John Doe 1, 2, 3, and 4

208. Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

209. The conduct of these defendants as set forth herein was extreme and outrageous, and was undertaken with the intent to cause, or with reckless disregard of the likelihood that it would cause, the plaintiff to suffer severe emotional distress, as more fully described above.

210. As a direct and proximate result of the defendants' conduct plaintiff suffered and continues to suffer great mental anguish, humiliation, degradation, physical and emotional pain and suffering and other grievous and continuing injuries and damages.

## DEMANDS FOR RELIEF

The Plaintiff respectfully requests the following relief:

1. All compensatory damages recoverable;
2. Injunctive relief;
3. All punitive damages recoverable;
4. All attorney's fees, costs and expenses allowable;
5. Any and all other relief as the Court deems just and proper;
6. That Defendants be found joint and severally liable.

## PLAINTIFF DEMANDS A JURY TRIAL AS TO ALL COUNTS IN THE COMPLAINT

Respectfully submitted,
Plaintiff ANGEL SANTIAGO
By his attorneys,

/s/ *Robert A. Scott*
Hector E. Pineiro BBO # 555315
Robert A. Scott BBO # 648740
Law Office of Hector E. Pineiro, P.C.
807 Main Street
Worcester, MA 01610
Tel. (508) 770-0600
hector@pineirolegal.com

/s/ *Jeanne A. Liddy*
Jeanne A. Liddy BBO # 646478
Law Offices of Jeanne A. Liddy
1380 Main Street, Suite #404
Springfield, MA 01103
Tel. (413) 781-7096
Liddylaw2005@yahoo.com

DATED: September 3, 2019