UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ANGEL SANTIAGO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF SPRINGFIELD, OFFICER MISIAL | ) | Civil Action 19-11869-MGM |
| RODRIGUEZ, POLICE COMMISSIONER | ) | |
| JOHN R. BARBIERI, MAYOR DOMINIC | ) | |
| SARNO, and OFFICERS JOHN DOE 1-4 | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM AND ORDER REGARDING DEFENDANT CITY OF
SPRINGFIELD'S MOTION TO COMPEL DEPOSITION OF ATTORNEY JEANNE LIDDY
(Dkt. No. 71)

I.    Introduction

Plaintiff Angel Santiago (Plaintiff) brings due process, malicious prosecution and

conspiracy claims pursuant to 42 U.S.C. § 1983 against police officer Misial Rodriguez

(Rodriguez), supervisory *Monell* claims against the City of Springfield (the City), Police

Commissioner Barbieri, and Mayor Dominic Sarno, along with related state law claims against

Rodriguez and the City.  Plaintiff claims that he was wrongfully charged and jailed for crimes he

did not commit.  He was represented in his criminal case by attorney Jeanne Liddy (Liddy), who

is also co-counsel for Plaintiff in the instant civil case.  Now before the court is Defendant City

of Springfield's Motion to Compel Deposition of Attorney Jeanne Liddy (Dkt. No. 71).  For the

following reasons, the City's motion is DENIED.

II.    Relevant Factual and Procedural Background

Plaintiff was arrested on or around September 5, 2016, after LaDaisha Bodiford (Bodiford), the sister of the victim, Trajhan Blue (Blue), identified Plaintiff as the individual who shot Blue. Plaintiff alleges that the identification was made from an improperly suggestive photographic array (Compl., ¶¶ 14-16, 27; Dkt. No. 71-1 at 3). He claims that Springfield Police Officers ignored evidence that pointed to another suspect, including that Blue identified a different perpetrator (Compl. ¶ 21). It is undisputed that police officers recovered a shell casing from the scene where Blue was shot (Compl. ¶ 19). The next day, there was a fatal shooting at a different location (Second Shooting). Police officers recovered a shell casing from the scene of the Second Shooting that matched the casing recovered from the scene of Blue's shooting, for which Plaintiff was arrested (Compl. ¶ 22). The individual arrested for the Second Shooting was the individual named by Blue as his assailant (Compl. ¶ 22).

On or around November 22, 2016, Rodriguez testified before a grand jury. According to Plaintiff, Rodriguez gave misleading testimony to the grand jury (Compl. ¶¶ 28-31). The grand jury indicted Plaintiff for armed assault with intent to murder, assault and battery by means of a dangerous weapon, and illegal possession of a firearm. Plaintiff could not make bail and spent some eight months in jail (Compl. ¶ 32). On or around February 6, 2017, Liddy, Plaintiff's defense attorney, was provided with the grand jury minutes (Compl. ¶ 33). On or around May 17, 2017, Liddy filed motions for discovery (Compl. ¶ 34). The Hampden County District Attorney's Office (HCDAO) entered a nolle prosequi in Plaintiff's criminal case on or around May 25, 2017, after which Plaintiff was released from jail (Compl. ¶¶ 35-36).

Assistant District Attorney Maximillian Bennett (Bennett) was the prosecutor assigned to Plaintiff's case (Compl. ¶ 35) . Plaintiff took Bennett's deposition on January 27, 2022 (Dkt. No. 71-1 at 1). At that deposition, Bennett testified that he had two conversations with Liddy.

The first was about discovery motions she had filed.  After the first conversation, Bennett called Liddy back to ask if she expected the case to be resolved by a plea given that he had an eyewitness who had identified Plaintiff as the shooter.  Bennett testified that Liddy was emphatic in saying that Plaintiff would not plead guilty.  He did not recall exactly what Liddy said, but he understood her to say that the eyewitness, Bodiford, had changed her mind or told the police that someone else had been the shooter (Dkt. No 71-1 at 2-3; Dkt. No. 82-1 at 12-13).  He believed she said something about Yabdiel Castro (Dkt. No. 71-1 at 3; Dkt. No. 82-1 at 13).  Bennett testified that the conversation caused him to try and speak with Bodiford to "see what was going on with her" (Dkt. No. 71-1 at 3).  Bennett asked the assigned victim-witness advocate to reach out to the family (Dkt. No. 82-1 at 13).  Bodiford's mother appeared at the HCDAO.  Bodiford did not "show up" (Dkt. No. 71-1 at 3).  During the meeting with Bodiford's mother, Bennett learned that Bodiford "was not going to be proceeding in the prosecution" (Dkt. No. 71-1 at 8).  Bennett testified that he entered a nolle prosequi in the case that day or the next day because he "no longer had LaDaisha Bodiford on board in this prosecution, meaning [he] had no identification" (Dkt. No. 82-1 at 14).  Bennett had no knowledge that any Springfield police officer knew that Bodiford did not intend to identify Plaintiff as the individual who shot Blue. He did not know where Liddy got the information that Bodiford no longer intended to identify Plaintiff as the individual who shot Blue (Dkt. No. 71-1 at 7).

The City represents that the parties held a discovery conference to discuss the City's request to depose Liddy and that, at that conference, Liddy's co-counsel stated that he would not make Liddy available for deposition if her deposition was noticed (Dkt. No. 71 at 2).  So far as appears from the record before the court, the City did not serve a deposition subpoena pursuant to Fed. R. Civ. P. 45(a) on Liddy commanding her to appear for deposition.

3

III.    <u>Analysis</u>

1.    The City Cannot Compel Liddy's Deposition Where it Failed to Serve
her with a Deposition Subpoena.

As an initial matter, the City's motion to compel is procedurally defective in that the City

did not serve Liddy, a non-party, with a subpoena pursuant to Fed. R. Civ. P. 45 requiring her

appearance at a deposition.  *See Hasbro v. Serafino*, 168 F.R.D. 99, 100 (D. Mass. 1996) ("'Rule

45 has a close relation to the proper functioning of the discovery rules.  Most notably, a

subpoena is necessary to compel someone who is not a party to appear for the taking of the

deposition.'") (quoting 9A Wright & Miller: Federal Practice and Procedure § 2452 (1995)).

The City's motion purports to be brought pursuant to Fed. Rs. Civ. P. 30(a) and 37(a) (Dkt. No.

71).  Rule 30(a) requires that "[a] party who wants to depose a person by oral questions must

give reasonable written notice to every other party."  So far as appears from the parties'

submissions, the City has not complied with Fed. R. Civ. P. 30(a).  Further, Rule 37(a), which

governs motions for orders compelling discovery, applies to failures to make disclosures or to

cooperate in discovery.  Where an individual has not been served with a deposition subpoena,

there is no basis for a court to find that the individual failed to cooperate in discovery.  *See* Fed.

R. Civ. P. 37.  Most significantly, the court has no authority to require a non-party who has not

been served with a deposition subpoena to appear for a deposition.  "[A] subpoena is necessary

to compel someone who is not a party to appear for the taking of a deposition or for a hearing or

trial."  *United States v. Santiago-Lugo*, 904 F. Supp. 43, 47 (D.P.R. 1995); *see also Jimenez v.*

*Amgen Mfg. Ltd.*, 692 F. Supp. 2d 219, 222-23 (D.P.R. 2010) (the court held that it could not

compel someone to appear for a deposition where the opposing party had served the potential

deponent's attorney with a deposition notice but had not served the potential deponent with a

subpoena).  The City's failure to serve Liddy with a deposition subpoena requires that the court

deny the motion to compel Liddy's deposition.  *See Jimenez*, 692 F. Supp. 2d at 223.

    2.      The City has not Shown That Liddy's Deposition is Necessary.

Even if the City had properly noticed Liddy's deposition and served her with a subpoena,

which it did not, the City has not shown that Liddy's deposition is necessary in this case.  "Any

time a deposition notice names an opposing party's counsel, current or former, as the deponent,

red flags go up.  Although the Federal Rules of Civil Procedure do not specifically prohibit the

deposition of a party's counsel, depositions of opposing counsel are generally disfavored."

*Abiomed Inc. v. Maquet Cardiovascular LLC*, Civil Action No. 1:16-10914-FDS, 2017 WL

11625640, at *2 (D. Mass. Oct. 6, 2017) (*citing Bogosian v. Woloohojian Realty Corp.*, 323 F.3d

55, 66 (1st Cir. 2003)).  Among other significant concerns, "'counsel depositions carry the

substantial potential of spawning litigation over collateral issues related to assertion of privilege,

scope and relevancy.'"  *Id.* (quoting *Sterne Kessler Goldstein & Fox, PLLC v. Eastman Kodak

Co.*, 276 F.R.D. 376, 382 (D.D.C. 2011)).

> In deciding whether a deposition of opposing counsel … is appropriate, courts
> often use the test adopted by the Eighth Circuit in *Shelton v. American Motors
> Corp.*, 805 F.2d 1323 (8th Cir. 1986).  *See Dunkin' Donuts, Inc. v. Mandorico,
> Inc.*, 181 F.R.D. 208, 210 (D.P.R. 1998).  Under that test, depositions of opposing
> counsel should be limited to where the party seeking to take the deposition has
> shown that (1) no other means exists to obtain information other than to depose
> opposing counsel; (2) the information sought is relevant and non-privileged; and
> (3) the information is crucial to the preparation of the case.  *Shelton*, 805 F.2d at
> 1327 (citation omitted).  The crucial factor in determining whether the *Shelton*
> test applies is the extent of the lawyer's involvement in the pending litigation.
> *Nat'l W. Life Ins. Co. v. W. Nat'l Life Ins. Co.*, No. A-09-711-LY, 2010 WL
> 5174366, at *3 (W.D. Tex. Dec. 13, 2010); *see also Desert Orchid Partners,
> L.L.C. v. Transaction Sys. Architects, Inc.*, 237 F.R.D. 215, 220 (D. Neb. 2006).

*Id.*[1]

According to its motion, the City seeks to depose Liddy to ask her what she told Bennett about Bodiford's status as an identification witness in Plaintiff's case (Dkt. No. 71 at 2). Bennett testified that he did not remember exactly what Liddy said, but he remembered enough to testify that their conversation prompted him to reach out to Bodiford and her family to see what was going on with Bodiford (Dkt. No. 71-1 at 3). There may be some uncertainty about what Liddy said to Bennett. She may even dispute that she advised Bennett about her expectations as to Bodiford's likely lack of cooperation. In either case, the City has a witness in Bennett to testify to: (1) all the information he received from Rodriguez, the lead investigator in the case, *see Drumgold v. Callahan*, 707 F.3d 28, 38 (1st Cir. 2013) ("law enforcement officers have a … duty to turn over to the prosecutor any material evidence that is favorable to a defendant"); (2) the what, when, and why he entered a nolle prosequi in Plaintiff's criminal case; and (3) where the information came from on which he based that decision. Plaintiff has stipulated that he does not intend to call Liddy as a witness in his civil case. It is not clear, in these circumstances, why it is essential to the City's case "to establish what exactly … Liddy said regarding the alleged recantation or lack of cooperation, to show that there was no late disclosure of exculpatory information by the City or its police officers" (Dkt. No. 71 at 2).

Applying the *Shelton* factors, the City has, in Bennett, another source for the information it seeks to elicit from Liddy. It is not clear that the information the City claims to seek is relevant where Plaintiff has stipulated that he does not intend to call Liddy as a witness, and will not, therefore, be able to establish any version of the conversation between Liddy and Bennett

---

[1] The court in *Abiomed* observed that the First Circuit has not explicitly adopted the *Shelton* test but has used a similar test for purposes of deciding whether opposing counsel can be required to testify at trial. *Id.*, 2017 WL 11625640, at *2 n.3 (citing *Bogosian*, 323 F.3d at 66).

other than Bennett's version.  While Liddy's account of a conversation with Bennett would not

be privileged, any follow-up inquiry seeking information about the source of Liddy's knowledge

might well be privileged as an attorney-client communication or protected by the work product

doctrine.  In view of the limited purpose for which the City seeks Liddy's deposition according

to its motion and Plaintiff's stipulation that he will not call Liddy as a witness, the information

does not appear crucial to the City's case.  The most important factor is the lawyer's involvement

in the pending litigation.  *See Nat'l W. Life Ins. Co.*, 2010 W: 5174366, at *3.  Liddy is

Plaintiff's co-counsel in the instant case and is actively involved in the litigation.  To the extent a

deposition of Liddy would risk limiting her involvement in the case, impairing her relationship

with Plaintiff, or exposing Plaintiff's litigation strategy, this factor favors barring her deposition.

*See, e.g., Wilson v. Scruggs*, No. Civ.A. 3:02CV525LN, 2003 WL 23521358, at *1 (S.D. Miss.

Apr. 10, 2003) (stating that "depositions of opposing counsel are discouraged, as they disrupt the

adversarial process and lower the standards of the profession" and should be allowed only "in the

most unusual circumstances") (citing *Shelton*, 805 F.2d at 1327; *Buford v. Holladay*, 133 F.R.D.

487, 491 (S.D. Miss. 1990)).

    "Finally, chief among the concerns cited by federal courts, is that counsel depositions

carry the substantial potential of spawning litigation over collateral issues related to assertion of

privilege, scope, and relevancy, that only end up imposing additional pretrial delays and costs on

both parties and burdens on the courts to resolve work-product and privilege objections."  *Sterne*

*Kessler Goldstein & Fox, PLLC*, 276 F.R.D. at 382 (collecting cases).  There can be little doubt

that Liddy, as defense counsel in the underlying case, has knowledge of facts relevant to

Plaintiff's claims.  There can also be little doubt that much of that knowledge is protected by the

attorney-client privilege or subject to work product protection.  Thus, any deposition of Liddy

would almost certainly run into claims of attorney-client privilege and work product protection and arguments about appropriate scope and relevance.  This consideration also weighs against permitting the defendants to depose Liddy.

IV.   <u>Conclusion</u>

For the foregoing reasons, Defendant City of Springfield's Motion to Compel Deposition of Attorney Jeanne Liddy (Dkt. No. 71) is DENIED.

It is so ordered.

Dated: July 7, 2022                                    <u>Katherine A. Robertson</u>
                                                       KATHERINE A. ROBERTSON
                                                       U.S. MAGISTRATE JUDGE